UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AILEEN W. ASSENHEIMER,

                Plaintiff,

– against –

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**OPINION AND ORDER**

13 Civ. 8825 (ER) (SN)

RAMOS, D.J.:

      Before the Court is the Report and Recommendation ("R & R") dated August 4, 2015 of Magistrate Judge Sarah Netburn, to whom this matter was referred for judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying *pro se* Plaintiff Aileen W. Assenheimer's ("Plaintiff") application for disability and Social Security Disability Insurance Benefits ("DIB"). In the R & R, Judge Netburn recommends granting the Commissioner's motion for judgment on the pleadings. For the reasons stated herein, the Court ADOPTS the R & R and directs the entry of judgment as recommended.

**I. Background**
  **A. Factual and Procedural Background**

      On July 29, 2009, Plaintiff applied for DIB, claiming that she suffered from a cerebral hemorrhage and a spindle cell tumor with an onset date of February 22, 2007. R & R, Doc. 32 at 2. The Social Security Administration ("SSA") denied Plaintiff's application on October 22, 2009. *Id.* After requesting a hearing, Plaintiff appeared *pro se* before Administrative Law Judge ("ALJ") Katherine Edgell on January 5, 2011. *Id.* ALJ Edgell issued her decision on February 28, 2011. *Id.* She found that Plaintiff's date last insured ("DLI") was December 31, 2008, and

that, through that date, Plaintiff suffered from "status post cerebrovascular accident . . . with intermittent sensory changes in three fingers on her left hand; a benign pleural mass in her left lung; headaches; and histories of asthma and hypertension." *Id*. at 7.  Nonetheless, the ALJ denied Plaintiff's application, determining that Plaintiff was not disabled under the Social Security Act ("the Act") and retained the residual functional capacity ("RFC") to perform unskilled, sedentary work that required her to lift up to ten pounds at a time. *Id*.

Plaintiff appealed ALJ Edgell's initial decision, and on February 21, 2013, the SSA's Appeal Council remanded the case for the ALJ to determine whether the earnings Plaintiff reported as starting in 2011 entitled her to a later DLI. *Id*. at 2.  Plaintiff obtained an attorney and appeared before ALJ Edgell on May 21, 2013 for a second hearing. *Id*.  The ALJ denied Plaintiff's application for a second time on June 13, 2013, once again finding that Plaintiff's DLI was December 31, 2008 and that she did not qualify as disabled under the Act. *Id*.

Plaintiff filed the instant action on December 11, 2013.  Doc. 1.  On November 14, 2014, the Commissioner moved for judgment on the pleadings.  Doc. 21.

### B. Plaintiff's Opposition to the Commissioner's Motion

In her opposition papers, Plaintiff made four arguments, maintaining that the ALJ: (1) did not properly evaluate her DLI; (2) failed to consider evidence after that date; (3) misinterpreted or disregarded the vocational expert's testimony; and (4) failed in her duty to develop the record. *Id*. at 7, *see also* Doc. 27.

Specifically, Plaintiff claimed that, when she was questioned about her earnings, she simply stated that she had to check with her accountant.  Doc. 27 at 5.[1]  After Plaintiff reviewed

---

[1] Given the lack of sequential numbering in Plaintiff's opposition papers, the Court's refers to the page numbers reflected on ECF.

her tax returns, she later determined that she earned money as a healthcare provider to her parents. *Id*.

Plaintiff also took issue with the ALJ's assessment of the severity of her condition. *Id*. at 7-8. She faulted the ALJ for not properly considering the vocational expert's testimony, or the opinion of Nina Martin ("Martin"), a social worker whom Plaintiff began seeing in August 2010. *Id*. 8-9. Plaintiff cited "missing, inaccurate, and overlooked medical evidence" and attached a number of exhibits to her opposition, which she claimed consisted of new medical records and evidence that should have been obtained after the Appeal Council's remand. *Id*. at 5, 10.

## II.  Standard of Review

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may raise "specific," "written" objections to the report and recommendation "[w]ithin fourteen days after being served with a copy." *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). A district court reviews *de novo* those portions of the report and recommendation to which timely and specific objections are made. 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38 (2d Cir. 1997). The district court may adopt those parts of the report and recommendation to which no party has timely objected, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008) (quoting *Arthur v. Goord*, No. 06 Civ. 326 (DLC), 2008 WL 482866, at *3 (S.D.N.Y. Feb. 21, 2008)). The district court will also review the report and recommendation for clear error where a party's objections are "merely perfunctory responses" argued in an attempt to "engage the district court in a rehashing of the same

arguments set forth in the original petition." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and internal quotation marks omitted).

## III. Discussion

On September 11, 2015, Plaintiff timely filed her objections.[2]  Doc. 36.  However, Plaintiff does not meaningfully contest Judge Netburn's findings and merely rehashes points that she has previously asserted.  Therefore, the Court determines that Plaintiff's objections are "merely perfunctory responses" argued in an attempt to "engage the district court in a rehashing of the same arguments set forth in the original petition," and accordingly reviews the R & R only for clear error.  *Ortiz*, 558 F. Supp. 2d at 451.

### A. Plaintiff's Objections

Plaintiff's objections ignore the R & R and merely reiterate arguments made to Judge Netburn.  Once more, Plaintiff challenges her DLI, repeating her assertion that when she was questioned about her post-2008 earnings, she stated that she had to check with her accountant.  Doc. 36 at 4-5, 6.  Plaintiff also argues that the ALJ's decision was not supported by substantial evidence and contests Judge Netburn's conclusions concerning the severity of her illness.  *Id*. at 3, 4.  In addition, Plaintiff again states that the ALJ improperly relied on the vocational expert's testimony and questions the ALJ's decision not to adopt Martin's opinion.  *Id*. at 1, 5, 6.  Finally, Plaintiff maintains that the ALJ did not meet her duty to investigate and develop the facts by failing to discover who her doctors were, which hospitals she was treated at, and obtain the corresponding records.  *Id*. at 2.  She once again refers to the "new evidence" she attached as exhibits to her opposition papers, contending that it should have been considered because her correct DLI is December 31, 2011.  *Id*. at 6.

---

[2] On August 18, 2015, the Court granted Plaintiff a ten-day extension to file her objections.  Doc. 33.

### B. The R & R

In the R & R, Judge Netburn individually addressed each of Plaintiff's arguments, ultimately concluding that the ALJ's determination is supported by substantial evidence and does not contain legal error. Doc. 32 at 7. Specifically, the ALJ had substantial evidence on which to base her finding that Plaintiff's DLI was December 31, 2008. *Id*. at 8-9. At the second hearing, Plaintiff "unequivocally" testified that the reported earnings after 2008 were "gifts from [her] parents" and that she only reported the money as self-employment earnings, rather than gifts, because her accountant advised her to do so. *Id*. at 8 (alteration in original). Since "gifts are not a form of income entitling the recipient to disability benefits," Plaintiff's DLI was therefore December 31, 2008. *Id*. at 7-8 (citing 20 C.F.R. § 416.1121(g)).

Judge Netburn agreed with the ALJ that, "by caring for two children, doing housework, driving, litigating, volunteering, and trying to start a consulting business, all without help, Assenheimer showed that she was capable of numerous, diverse activities that involved fine motor skills." *Id*. at 12. The ALJ found that the only objective limitations that Plaintiff suffered from were numbness in three of her fingers and a non-malignant chest mass, with no evidence of "asthma, hypertension or headaches of any serious severity." *Id*. at 11. Although Plaintiff experienced a cerebrovascular accident, the ALJ noted that the only remaining effect was the intermittent numbness in Plaintiff's left hand. *Id*. at 11-12. Plaintiff's headaches were irregular and never occurred more than a few times every week, requiring treatment with Tylenol. *Id*. at 12. On September 12, 2008, Plaintiff informed one of her doctors that her migraines had ceased. *Id*. Taking all of these facts into consideration, Judge Netburn found substantial evidence to support the ALJ's determination that Plaintiff has the ability work at jobs that exist in sufficient numbers in the national economy. *Id*. at 13.

As to the vocational expert, Judge Netburn observed that Plaintiff selectively quoted one of the five hypotheticals posed by the ALJ—the only one that the vocational expert stated would render the hypothetical claimant unable to work:

> The hypothetical in question described an individual who could lift only 10 pounds; was unable to continually bend or squa[t]; was frequently unable to feel with three fingers on her non[-]dominant hand; and could not sit, stand or walk for a total of eight hours a day. The [vocational expert] testified that "[s]uch an individual would not be able to do full-time employment."

*Id*. at 17.  However, the vocational expert also testified that "individuals with characteristics closer to Assenheimer's could work." *Id*. at 17.  Therefore, Judge Netburn determined that the ALJ's consideration of the vocational expert's testimony does not constitute grounds for remand. *Id*. at 18.

Furthermore, Judge Netburn concluded that the ALJ was not required to afford Martin, the social worker Plaintiff interacted with, any special weight. *Id*. at 10.  First, Martin did not begin treating Plaintiff until August 19, 2010, long after Plaintiff's DLI. *Id*.  In addition, the ALJ was not required to afford Martin's opinion the weight of a treating physician's because social workers are not among the five "[a]cceptable medical sources" who can provide evidence to establish an impairment. *Id*. at 10 (citing 20 C.F.R. § 404.1513(a); *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995)).  Judge Netburn also pointed out that, even if Martin were to be considered a treating physician, the opinion of a treating physician is not binding if it is contradicted by substantial evidence. *Id*. (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence . . . and the report of a consultative physician may constitute such evidence.")).  Here, Martin's opinion was contradicted by the report of State Agency reviewing

psychologist, who found insufficient evidence to conclude that Assenheimer's anxiety was disabling. *Id*. at 11.

The R & R indicates that Plaintiff attached numerous documents to her opposition papers that post-date her DLI and were not part of the administrative record used to determine her benefits status. *Id*. at 13. However, Judge Netburn reasoned that they are not material and should not be considered or trigger remand because the records post-date Plaintiff's DLI and do not relate back to her condition before that date. *Id*. at 14. According to the R & R, Plaintiff attached records that "describe a series of maladies that have affected Assenheimer since after her DLI," yet, "[n]othing in any of the new evidence exhibits or in the plaintiff's opposition papers links these new conditions to those alleged in her disability application or to those that were present before her DLI."[3] *Id*. at 16. Although Judge Netburn acknowledged a "renewed complaint of back pain" in one of Plaintiff's exhibits, she indicated that it "describes back pain stemming from unrelated reasons—mild dextroscoliosis (a curve of the spinal column) and mild spinal stenosis—that began in 2014, well after her DLI." *Id*. Moreover, "[a]side from the new evidence exhibits, [Plaintiff] has submitted exhibits that are cumulative because they either are already in the existing record or are mere summaries of it." *Id*. at 15.

Finally, Judge Netburn stated that "[w]hile it is true that a case may be remanded where a record is seriously underdeveloped, that is not the case here." *Id*. at 18 (citing *Rosa v. Callahan*, 168 F.3d 72, 79-80 (2d Cir. 1999)). Judge Netburn specifically responded to Plaintiff's argument that the ALJ failed in her duty to develop the record by not obtaining the results of a forensic exam she underwent. First, Plaintiff's record consists of "605 pages of notes from a

---

[3] Specifically, these maladies include, but are not limited to, a lap distal pancreatectomy/spelenectomy to remove a benign tumor from her spleen, a knee injury, various forms of pain, including abdomen, back and shoulder pain, a thyroid problem, back problems, and stenosis. *Id*. at 15-16.

wide variety of doctors, with documents spanning as far back as 2006 and up to and including 2013." *Id*. at 20.  Second, Judge Netburn observed that Plaintiff's counsel raised no objections to the evidence in the record.  *Id*.  Third, since it does not appear that the forensic exam was ordered by one of Plaintiff's treating physicians, it is entitled to less evidentiary weight and the ALJ had no duty to obtain it.  *Id*. (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).  In sum, Judge Netburn concluded that, "[f]aced with the records of many different physicians and no objections from the plaintiff or her counsel, the ALJ's duty to make 'every reasonable effort' was fulfilled, and she was not obligated to seek a sealed forensic opinion of which she had no notice."  *Id*.

Judge Netburn reached her determination after a careful review of the parties' submissions and the applicable law.  Specifically, Judge Netburn's determinations that the ALJ adhered to the treating physician rule, correctly applied the Act's insured status requirements, properly relied on the testimony of a vocational expert and met her duty to develop the record are all well-reasoned.  Plaintiff's objections do not meaningfully contest these findings.  This Court finds that the R & R was not clearly erroneous in concluding that the ALJ's decision was free of legal error and supported by substantial evidence.  Thus, it adopts the R & R's recommendations, in their entirety.

## IV.  Conclusion

Having reviewed Judge Netburn's thorough R & R, the Court finds no error, clear or otherwise.  The Court therefore ADOPTS Judge Netburn's recommended judgment for the reasons stated in the R & R.  Accordingly, the Commissioner's motion for judgment on the pleadings is GRANTED.

On September 11, 2015, Plaintiff submitted an application for the Court to request *pro bono* counsel, which is dismissed as moot.  *See* Doc. 35.

The Clerk of the Court is respectfully directed to enter judgment, terminate the motions, Docs. 21 and 35, and to close this case. As Plaintiff has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *see also, e.g.*, *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). This Court additionally certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

It is SO ORDERED.

Dated: September 29, 2015
      New York, New York

                                        Edgardo Ramos, U.S.D.J.